UNITED STATES of America, Appellee,

v.

George B. WALDRON, Defendant, Appellant.

No. 78–1280.

United States Court of Appeals, First Circuit.

Argued Dec. 4, 1978.

Decided Jan. 15, 1979.

James M. Pool, Boston, Mass., for defendant, appellant.

Michael A. Collora, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant challenges his conviction for conspiracy to transport stolen property in interstate commerce in violation of 18 U.S.C. § 371. The substantive offenses appellant was charged with conspiring to commit make it illegal to transport or to sell in interstate or foreign commerce goods worth at least $5000, knowing the goods to have been stolen. 18 U.S.C. §§ 2314 and 2315. The facts have a titillating twist which raises an intriguing if not unsettled issue. Simply put, appellant and comrades labored and plotted to import and sell valuable stolen paintings located in Montreal, Canada, to buyers in the United States, only to find that the one painting actually delivered was not stolen but was a forgery worth far less than $5000.

Appellant moved variously to quash the indictment, for a judgment of acquittal, and for instructions as to the necessity of his knowledge of theft and value. All motions raise the issue whether, to convict one of conspiracy, the government must show the specific knowledge that the goods were stolen and the value of the goods required to convict one of the substantive crime.

The district court, in denying all motions, relied on *Craven v. United States,* 22 F.2d

605, 609 (1st Cir. 1927), in which we said that "a conspiracy to smuggle foreign liquor would be made out, even if . . . in effecting the conspiracy . . . the conspirators had been imposed upon by the substitution of liquor of domestic origin."

We see no reason, on this record, to back away from the principle that a culpable conspiracy may exist even though, because of the misapprehension of the conspirators as to certain facts, the substantive crime which is the object of the conspiracy may be impossible to commit. When we say "on this record", we refer to these factors: the assumptions and belief of appellant and his associates were that the paintings were authentic, stolen, and of great value; the conspiracy had advanced far beyond contemplation by the overt acts of making many telephone calls, taking two trips to Montreal, and delivering, selling, and transporting to Boston a painting; the evidence was not confined to the testimony of government undercover agents but included evidence of telephone calls from appellant to other conspirators. In short, this case falls far short of presenting any danger of a trumped-up charge of conspiracy being successfully levied against persons for their mere wishful thinking.

The fact is that these conspirators were shown by plentiful evidence to have planned to violate a federal law and to have taken substantial steps to bring their scheme to fruition although ultimately they were frustrated by their factual miscalculations. While the law has not always been consistent in its approach to such a situation, we see a substantial tradition consistent with *Craven,* taking on strength from recent developments.

We begin with *United States v. Rabinowich,* 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211 (1915), in which the Court not only remarked the separate nature of conspiracy—a "deliberate plotting to subvert the laws, educating and preparing the conspirators for further and habitual criminal practices", *id.* at 88, 35 S.Ct. at 685—but noted that "[a] person may be guilty of conspiring although incapable of committing the objective. offense." *Id.* at 86, 35 S.Ct. 684. Recently in *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), the Court identified "two independent values served by the law of conspiracy": the first that the law of conspiracy is for the "protection of society from the dangers of concerted criminal activity", *id.* at 693, 95 S.Ct. at 1268; and the second, more pertinently, that

> "[t]he law of conspiracy identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order to permit the imposition of criminal sanctions for the agreement alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon actually is committed." *Id.* at 694, 95 S.Ct. at 1268.[1]

We see no difference in the threats to these values between an agreement plus an overt act where the conspirators decide, from fear of apprehension, to cancel or postpone their plan and an agreement plus an overt act where cancellation or postponement results from impossibility through factual miscalculation or misapprehension.

Appellant's reliance on pre-*Feola* cases from the Second Circuit following *United States v. Crimmins,* 123 F.2d 271 (2d Cir. 1941), *see* n. 1, as well as early Ninth Circuit cases, *see United States v. Sanford,* 547 F.2d 1085 (9th Cir. 1976), seems misplaced. The Fifth Circuit has held that the government need not prove that goods worth more than $5000 were actually transported to make out a conspiracy to violate 18 U.S.C. § 2314 so long as the conspirators planned to transport sufficiently valuable goods.

---

1. *Feola* characterized as "effective prose" but "bad law" Judge Learned Hand's "traffic light" analogy in *United States v. Crimmins,* 123 F.2d 271, 273 (2d Cir. 1941) ("While one may . . . be guilty of running past a traffic light of whose existence one is ignorant, one cannot be guilty of conspiring to run past such a light, for one cannot agree to run past a light unless one supposes that there is a light to run past.") Appellant succeeds both in relying on Judge Hand's rationale and in indicating awareness that it has been effectively overruled.

*United States v. Maddox,* 492 F.2d 104, 106 (5th Cir. 1974).[2]

Perhaps as thoughtful a canvass of authorities and literature on the subject of actions which would have constituted a completed crime if things were as the perpetrator thought them to be, in the analogous context of the law of attempt, is to be found in *United States v. Heng Awkak Roman,* 356 F.Supp. 434, 437–38 (S.D.N.Y. 1973), *aff'd,* 484 F.2d 1271 (2d Cir. 1973).[3] In the terms of the discussion in that case, we see this case as clearly one of "factual impossibility"—i. e., "conduct where the objective is proscribed by the criminal law, but a circumstance unknown to the actor prevents him from bringing it about." *Id.* at 438. As the court indicates, this kind of impossibility is no defense even to the substantive crime. A fortiori it is not a defense to a conspiracy charge.

*Affirmed.*

2. *Maddox* is not necessarily undercut by later dictum that a conspiracy charge requires "at least the knowledge required by the substantive offense itself." *United States v. Muncy,* 526 F.2d 1261 (5th Cir. 1976). *Muncy* held only that proof of knowledge that the stolen goods moved in interstate commerce was not essential. It did not address the question whether proof that the conspirators thought the goods were stolen would be sufficient to make out the conspiracy even if in fact the goods were not stolen.

3. In that case defendants, acting in concert with a government informer, gave to the informer a suitcase containing heroin to be smuggled by the informer from Singapore to the United States. Before leaving Singapore, however, the informer gave the heroin to government agents and substituted soap powder for it. It is worth noting that the court, sitting without a jury, convicted defendants both of conspiracy and of attempt to commit the substantive offense. The court apparently did not consider the conspiracy question a difficult one.