[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 27, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15233
Non-Argument Calendar

_____

D. C. Docket No. 06-00003-CR-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL ALLEN HOLLAND,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(April 27, 2007)**

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Following a jury trial, Michael Allen Holland ("Holland") was convicted of

one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g) and 924(e), and was sentenced to 180 months of imprisonment. Holland now appeals, raising a number of evidentiary issues. We AFFIRM.

## I. BACKGROUND

Because most of the evidence adduced in Holland's case is not in dispute, we recite it only briefly, so as to provide some background. On 30 September 2004, Holland, a convicted felon, pawned a Remington model 742, .308 caliber rifle to a pawn shop in Darien, Georgia. A subsequent investigation by the government determined the following facts: that Holland had prior felony convictions; that the receipt by which the gun was conveyed to the pawn shop identified "Michael A. Holland" as the weapon's seller and that the document contained his signature; that Holland had been identified as a regular customer at the pawn shop; and that the serial number on the pawn shop receipt matched a Remington model 742 rifle that was subsequently recovered by the government.

In light of this evidence, in February 2006, Holland was charged in a one-count indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). After a jury trial, Holland was convicted and was sentenced to 180 months of imprisonment, which is the statutory minimum. See 18 U.S.C. § 924(e)(1). This appeal followed.

On appeal, Holland argues that the district court made a number of evidentiary errors during the course of his trial. Specifically, Holland argues that: (1) the district court abused its discretion in permitting the government's expert witness to testify at his trial, where the government failed to comply with the requirements of Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, which governs the disclosure of expert witnesses; (2) the district court abused its discretion by not permitting his witness, pawn shop owner Mike Morey, to testify as to the truthfulness of the shop employee who received the rifle from Holland; and (3) the district court abused its discretion in permitting one of the government's witness to testify about a phone conversation he had with Holland, because the Best Evidence Rule, Federal Rule of Evidence 1002, required the admission of an original recording of the conversation. We address each of these contentions in turn.

## II. DISCUSSION

A. <u>Standard of Review</u>

Holland's appeal is based on number of evidentiary rulings that the district court made, both prior to and during his trial. We review a district court's evidentiary rulings, including those involving expert witnesses, for abuse of discretion. <u>United States v. Smith</u>, 459 F.3d 1276, 1295 (11th Cir. 2006); <u>United</u>

3

States v. Garcia, 447 F.3d 1327, 1334 (11th Cir. 2006). In the context of evidentiary rulings we have defined an abuse of discretion as a situation "where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." United States v. Brown, 415 F.3d 1257, 1266 (11th Cir. 2005).

As a practical matter, however, "the abuse of discretion standard means that the district court has a range of choice." Id. at 1265. "We recognize a significant range of choice for the district court on evidentiary issues, which is to say we defer to its decisions to a considerable extent." Id. Indeed, as we have stated, "[t]he theme that shapes appellate review in this area is the limited nature of it." Id. Guided by that standard, we now turn to the issues raised by Holland on appeal.

B. District Court's Decision to Permit Government's Expert Testimony

Holland first contends that the district court abused its discretion in permitting the government's expert witness, Tobias ("Toby") Taylor, to testify as an expert at trial. Holland argues that the government failed to comply with the disclosure requirements for expert witnesses set forth in Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure. Specifically, he maintains that the government's pre-trial disclosure concerning expert witness Taylor did not include "the witness's opinions" or "the bases and reasons for those opinions," Fed. R.

4

Crim. P. 16(a)(1)(G), and that therefore the district court abused its discretion in permitting Taylor to testify.

Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure imposes specific disclosure requirements on the government with regards to expert witnesses that the government plans to utilize at trial. The rule provides, in pertinent part, that, "[a]t the defendant's request,[1] the government must give to the defendant a written summary of any [expert] testimony that the government intends to use." Id. The "summary" provided by the government must include the expert witness's "opinions, the bases and reasons for those opinions, and the witness's qualifications." Id. The commentary to the Rule further provides that the government's summary "should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion . . . ." Id., Advisory Comm. Notes, 1993 Amendment.

Here, the government made its expert witness testimony disclosure on 20 June 2006, approximately one month before trial. In that disclosure, which was titled "Government's Notice Re: Expert Witness Testimony" and which cited Rule 16, the government stated as follows:

---

[1] In this case it is not disputed that Holland requested the disclosure of any anticipated expert witness testimony as part of his discovery request to the government.

5

> Toby Taylor is a Special Agent with the Bureau of Alcohol, Tobacco, and Firearms, Savannah, Georgia. He will testify as to the origin and interstate nexus of the firearm at issue in this case. His curriculum vitae is attached.

R1-32. Subsequent to that disclosure, on 5 July 2006, the government sent a supplemental e-mail, entitled "Addendum to Interstate Nexus Witness," to Holland's counsel. The e-mail stated: "Taylor will testify that the Remington rifle in question was manufactured in New York State." R1-55, Exh. C.

Prior to trial, Holland's counsel filed a written objection to the admission of Taylor as an expert witness. He argued that the government had failed to provide him with either Taylor's opinion or the basis for that opinion, as was required under Rule 16(a)(1)(G). Holland's counsel contended that, due to the government's failure to comply with Rule 16, he did not have a sense of what Taylor would testify to, nor was he capable of deciding, prior to trial, whether and how to rebut his testimony. At trial, he renewed this objection. The district court overruled the objection, however, and permitted Taylor to testify. At trial, Taylor essentially testified that the Remington rifle that Holland had pawned had been manufactured in New York.[2]

---

[2] This testimony was necessary to establish the "interstate commerce" element of the charged offense. See 18 U.S.C. § 922(g) (stating that it is unlawful for a person with a prior felony conviction "to ship or transport in interstate commerce, or possess in or affecting interstate commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate commerce").

On appeal, Holland contends that the government violated Rule 16 with its inadequate disclosure as to its expert witness, that the violation "ambush[ed]" him at trial and left him unable to formulate an effective defense, and that, consequently, the district court abused its discretion in permitting Taylor to testify. Br. of Appellant at 11. While we agree that the government's conduct as to its expert witness fell short of the requirements of Rule 16(a)(1)(G), Holland has failed to establish that the admission of the expert's testimony actually prejudiced him. Consequently, we cannot find that the violation warrants a reversal of his conviction. See, e.g., United States v. Davis, 397 F.3d 173, 178 (3d Cir. 2005) ("Although we agree with defendants that the government failed to adequately satisfy this requirement [of Rule 16] . . . a new trial is only warranted if the [d]istrict [c]ourt's actions [in admitting the testimony] resulted in prejudice to the defendant.") (citation and internal quotations omitted).

As to the government's expert testimony disclosure and the initial question of whether it accorded with the protocol of Rule 16, we conclude that it did not. The Rule makes clear that the government is required to provide a criminal defendant with the both witness's ultimate opinion and "the bases and reasons for those opinions," including "not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis

7

for an opinion . . . ." Fed R. Crim. P. 16(a)(1)(G), Fed R. Crim. P. 16, Advisory

Comm. Notes, 1993 Amendment. In this case, the government provided a terse

letter–which stated only that witness Toby Taylor would testify as to the interstate

nexus of the Remington rifle at issue–followed by an equally terse e-mail stating

that Taylor would state that the Rifle was manufactured in New York state. The

government failed to provide any additional information as to "the bases and

reasons" for Taylor's conclusion that the rifle was made in New York; indeed, its

disclosure was devoid of any mention of "tests, reports, [] investigations," or "any

information that might be recognized as a legitimate basis" for that opinion. Fed

R. Crim. P. 16, Advisory Comm. Notes, 1993 Amendment. In short, we agree that

the government's conduct with respect to this witness disclosure was "not

impress[ive]," United States v. Chastain, 198 F.3d 1338, 1348 (11th Cir. 1999),

and that, under the plain language of Rule 16, the government was required to

provide a more detailed explanation of Taylor's anticipated expert witness

testimony.

That determination, however, does not automatically lead to the conclusion

that Holland's conviction must be reversed. Rather, we have held that where there

is a violation of Rule 16 and the district court nonetheless admits the testimony, the

defendant must establish that he or she suffered actual prejudice from the district

8

court's decision to admit the testimony. See id. at 1348 ("Violations of Rule 16 will result in a reversal of conviction only if such a violation prejudices a defendant's substantial rights."). See also Davis, 397 F.3d at 178 (same); United States v. Watson, 669 F.2d 1374, 1384 (11th Cir. 1982) (assessing not only whether Rule 16 was complied with, but also whether district court's choice to admit the testimony "prejudiced the substantial rights of the party seeking the reversal"). We have construed actual prejudice as a showing that the Rule 16 violation affected the defendant's ability to present an effective defense. See Chastain, 198 F.3d at 1348. In other words, the defendant alleging the Rule 16 violation must establish "a likelihood that the verdict would have been different had the government complied with the discovery rules." Davis, 397 F.3d at 178.

Here, although Holland contends that the admission of Taylor's expert testimony "ambush[ed]" him at trial, Br. of Appellant at 11, he has failed to demonstrate how, if at all, the admission of Taylor's testimony caused him prejudice. Taylor's testimony at trial was simple and straightforward; he confirmed that the rifle that was pawned in Georgia had been manufactured in New York. Any lay person could have observed this fact, because the gun indicated on its barrel that the weapon was manufactured in New York. While Taylor also testified as to his familiarity with the weapons that had been manufactured by

9

Remington since the company's inception, he stated that the fact that Holland's weapon had been made in New York easily could have been discovered through the company's website. Not only did Taylor testify exactly as the government's (inadequate) disclosure had indicated that he would, but Holland's counsel, despite his claimed lack of notice, engaged in a thorough cross-examination of the witness as to where Taylor obtained the (largely commonplace) information on which he based his opinion about the gun's origins.

Moreover, Holland has not demonstrated on appeal that the government's failure to fully comply with Rule 16 had an effect on the jury's verdict, or that it is likely that the "the verdict would have been different had the government complied with the discovery rules." Davis, 397 F.3d at 178. The sole purpose of Taylor's testimony was to establish that the weapon at issue had been "shipp[ed]," "transport[ed]," or "possess[ed]" in or affecting interstate commerce, or that the weapon had been "receive[d]" by a felon after being "shipped or transported in interstate commerce." 18 U.S.C. § 922(g). Put simply, as Holland had pawned the gun in Georgia, Taylor's testimony needed only to establish that the weapon's origins had been in a state other than Georgia. He confirmed in his testimony that, since Remington's inception in 1828, the company had manufactured weapons only in three states–New York, Connecticut, and Kentucky–and that, implicitly,

10

*any* Remington weapon bought, sold, possessed, or received in the state of Georgia would have traveled in interstate commerce. See R2 at 69-71. Although Holland contends that a more thorough disclosure by the government would have allowed him to prepare a rebuttal witness to refute Taylor, we "fail to see how a defense expert could have refuted" what was testimony of an "obvious" nature. See United States v. Anderson, 446 F.3d 870, 876 (8th Cir. 2006) (internal quotation omitted). Because Holland has not established that "the failure to disclose the existence of this expert adversely affected [his] ability to present a defense," Chastain, 198 F.3d at 1348, we cannot find that a reversal of his conviction is warranted. Accordingly, the district court's decision to admit the testimony of expert Taylor is affirmed.

C. District Court's Decision to Exclude the Testimony of Defense Witness Morey

Holland next argues that the district court abused its discretion in excluding the testimony of his witness, pawn shop manager Mike Morey, who Holland sought to use to provide reputation and opinion testimony as to the truthfulness of government witness James Riley Allen ("Allen"). The evidence in Holland's case established that Allen had been an employee at the pawn shop when Holland allegedly pawned the Remington rifle to the store; Allen had completed the paperwork in the transaction, and he subsequently identified Holland as the person who pawned the rifle. The government sought to call Allen to testify as to these

11

facts. However, it was subsequently discovered that Allen had been terminated by the pawn shop for stealing money from the shop. (In fact, Allen later admitted that he had stolen money from the shop.) Prior to trial it became clear that Holland wanted to draw attention to this conduct by calling as a witness Mike Morey, the pawn shop's owner. Holland hoped to use Morey's testimony about the theft incident so as to cast doubt on Allen's veracity as a government witness.

Anticipating this issue, the government filed a motion in limine, seeking to exclude all references to Allen's act of theft. The government contended that the theft incident constituted a specific instance of misconduct, which Holland was seeking to use "for the purpose of attacking or supporting the witness's character for truthfulness." Fed. R. Ev. 608(b). As such, the government argued that, under the plain language of Rule 608(b), Allen's specific instance of misconduct could not be asked about during Morey's direct testimony, although it could "be inquired into on cross-examination" of Allen. Id. In response, Holland conceded that he could not examine Morey regarding specific instances of misconduct by Allen under Rule 608, but Holland contended that Morey *could* provide testimony concerning Allen's "character for truthfulness" in the form of his opinion and his testimony about Allen's general reputation in the community. See Fed. R. Ev. 608(a).

12

After hearing from the parties on this issue prior to trial, the district court ruled that Holland *would* be allowed to cross-examine Allen about the specific instance of theft at the store, see Fed. R. Ev. 608(b), but that Holland would not be permitted to call Morey as a witness to testify about Allen's reputation for truthfulness in the community or to provide an opinion as to Allen's character for truthfulness. At trial, after Allen had testified about the gun transaction with Holland as part of the government's case-in-chief, Holland's counsel cross-examined Allen about the fact that he had stolen money from the pawn shop. Before the jury, Allen admitted to stealing money from the shop, stating that "[t]hose allegations were true." R2 at 36.

Holland, however, was not permitted to call Morey as a witness to testify about his opinion of Allen's character for truthfulness. The district court permitted Holland to make an offer of proof outside of the jury's presence; in that testimony Morey stated his opinion that witness Allen was not "too trustworthy." R2 at 88. On appeal, Holland contends that the district court's decision to preclude him from calling Morey as a witness to give his opinion of Allen's veracity was an abuse of discretion.

We disagree. Although Federal Rule of Evidence 608(a) permits a party to challenge the credibility of a witness using "evidence in the form of reputation and

13

opinion," a district court is not *required* to admit such testimony. See id. (stating that such evidence "*may*" be admitted) (emphasis added). In fact, Rule 403 expressly vests the district court with discretion to exclude otherwise admissible testimony in certain circumstances. That Rule provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In this case, Holland was permitted to bring out during his cross-examination of Allen the fact that Allen had stolen money from the pawn shop. This testimony was sufficient to draw the jury's attention to Allen's character for truthfulness (or lack thereof). See, e.g., United States v. Frazier, 387 F.3d 1244, 1273 (11th Cir. 2004) (en banc) (finding that the district court's exclusion of certain portions of expert testimony "did not prevent [the defendant] from introducing key elements of his defense and placing his story before the jury").

Moreover, we agree that calling an additional opinion witness to testify on the question of witness Allen's honesty would have been redundant. As such, we cannot find that the district court abused its discretion in excluding Morey's testimony under Rule 403, on the basis that such evidence was cumulative in nature and of negligible probative value. See, e.g., United States v. Haynes, 554

14

F.2d 231, 234 (5th Cir. 1977) (finding no abuse of discretion where district court declined to admit more than one witness's testimony about a DEA agent's reputation for veracity, since the additional testimony would have been "the same," and "thus the testimony would [have been] cumulative" and thus excludable under Rule 403).

Finally, it bears noting that the district court has a large amount of discretion in making evidentiary rulings as to which witnesses–and how many–may be permitted to testify at trial. We have stated that "the district court is uniquely situated to make nuanced judgments on questions that require the careful balancing of fact-specific concerns like probativeness and prejudice," and that therefore "we are loath to disturb the sound exercise of its discretion in these areas." United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003). Our case law has reiterated that a district court's rulings on "character evidence [under 608] will not be disturbed on appeal absent a showing of abuse of discretion." Haynes, 554 F.2d at 234. See also Watson, 669 F.2d at 1382 ("[T]rial courts . . . may limit the number of character witnesses a party may call and, absent an abuse of discretion, the district court's ruling will not be disturbed on appeal.") (citation omitted). Here, we cannot say that the district court's decision to exclude Morey's opinion testimony about Allen's honesty–an issue that had implicitly been raised during the

15

cross-examination of Allen–constituted an abuse of discretion.

D.  District Court's Decision to Permit Lou Valoze's Testimony

Holland also argues that the district court erred in admitting the testimony of Louis Valoze. Valoze, a special agent with the ATF who had initially investigated Holland's pawn of the Remington rifle to the pawn shop, was called by the government as a witness. Valoze testified that, after discovering that Holland had pawned his rifle, he had a conversation with Holland, via phone, to obtain more detailed information about the transaction. As Valoze began to testify as to what he and Holland discussed by phone, Holland's counsel lodged an objection. The basis of the objection was Federal Rule of Evidence 1002, the so-called "Best Evidence Rule." Specifically, Holland's counsel argued that because a recording had been made of the phone conversation between Valoze and Holland, the original recording of the conversation was required to be admitted into evidence in lieu of Valoze's testimony about that conversation. The district court overruled this objection, and allowed Valoze's testimony.[3] Holland argues that this was an

---

[3] In debating the merits of Holland's objection, the attorney for the government responded that "the best evidence rule only applies to writings." R2 at 39. This statement was incorrect, as the Rule itself makes clear that it applies to "writing[s], recording[s], or photograph[s]." Fed. R. Ev. 1002. See also McCormick on Evidence § 233 (6th ed. 2006) (stating that the "common law rule that [the best evidence rule] is not applicable to any evidence other than writings" has been "abandon[ed]" by the modern incarnation of Rule 1002).

To the extent that the district court based its overruling of Holland's objection on the flawed legal argument of the government, it acted in error. However, as is discussed subsequently, because we find that the Best Evidence Rule was not implicated at all by Agent

16

abuse of discretion.

The Best Evidence Rule states that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required." Fed. R. Ev. 1002. "The purpose of the Rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing [or recording]." United States v. Ross, 33 F.3d 1507, 1513 (11th Cir. 1994). However, the Best Evidence Rule only applies when the *contents* of the writing or recording are sought to be proved. See Fed. R. Ev. 1002, Advisory Comm. Notes ("Application of the rule requires a resolution of the question whether the contents are sought to be proved."); United States v. Howard, 953 F.2d 610, 612 (11th Cir. 1992) (per curiam) ("The best evidence rule . . . requires the introduction of original recordings, if at all, only when the content of the recording itself is a factual issue relevant to the use.").

Here, Valoze's testimony was not offered to prove the contents of the tape recording; Valoze was testifying as to his recollection of the conversation with Holland, based on his own personal knowledge, and the fact that a corroborative tape recording of that phone conversation was made is inconsequential. Under such circumstances the Best Evidence Rule is not implicated at all. See, e.g.,

_____

Valoze's testimony, we find that admission of the testimony was proper, irrespective of how the court construed the scope of the Best Evidence Rule.

17

Howard, 953 F.2d at 612-13 ("Since the proffered testimony was offered not to prove the content of the tapes, but rather, the content of the conversations, the best evidence rule does not apply and [the witness's testimonial recollection of the conversations] was properly admitted."); United States v. Fagan, 821 F.2d 1002, 1009 n.1 (5th Cir. 1987) ("The prosecution is not trying to show the contents of the tape, but rather the contents of the conversation, and, therefore, as the Advisory Committee notes suggests, the best evidence rule is inapplicable."); United States v. Rose, 590 F.2d 232, 236-37 (7th Cir. 1978) (same).

Because Holland's objection to the admission of Valoze's testimony based on the Best Evidence Rule was "completely without merit," see Fagan, 821 F.2d at 1009 n.1, the district court acted properly in admitting Valoze's testimony about the conversation. We reject his argument to the contrary.

### III. CONCLUSION

Holland has appealed his conviction for being a felon in possession of a firearm, arguing that the district court committed a number of evidentiary errors both prior to and during his jury trial. Having carefully reviewed the record, we discern no error. Accordingly, Holland's conviction is **AFFIRMED.**